# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES DINKINS, | No. 4:19-CV-01460 |
| Plaintiff, | (Judge Brann) |
| v. | |
| CAPTAIN HALL, | |
| Defendant. | |

## MEMORANDUM OPINION

### DECEMBER 29, 2020

Plaintiff James Dinkins, a prisoner presently confined at the Federal Medical Center at Springfield in Springfield, Missouri filed a complaint pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*[1] against Defendants James Potope, Michael Maygar, Captain Michael Hall, Physician's Assistant Bennett-Meehan, and Dr. Brian Buschman asserting an Eighth Amendment medical claim regarding treatment that ultimately resulted in the amputation of a toe. The complaint also alleged an Eighth Amendment conditions of confinement claim regarding his work assignment.[2] The Court previously entered summary judgment in favor of all medical defendants on the medical claim, but permitted Defendant Hall to file a second motion for summary judgment to address the dispositive issues in the Eighth Amendment conditions of confinement claim

---

[1]  403 U.S. 388 (1971).
[2]  Doc. 1.

against him.³  Presently before the Court is Defendant Hall's motion for summary judgment, which is now ripe for adjudication.⁴  For the reasons that follow, the Court will grant the motion.

## I. FACTUAL BACKGROUND

On July 1, 2009, Plaintiff was sentenced in the United States District Court for the District of Maryland to 480 months' incarceration for conspiracy to distribute and for possession with intent to distribute in violation of 21 U.S.C. §§ 841–851 and 21 U.S.C. § 846.⁵  Plaintiff is also serving a life sentence for obstruction of justice for killing another person with a firearm with the intent to prevent the person from attending and providing testimony at an official proceeding in violation of 18 U.S.C. § 1512.⁶  Plaintiff was incarcerated at the United States Penitentiary at Allenwood in White Deer, Pennsylvania from April 2, 2018, until April 11, 2019, where the events giving rise to the complaint occurred.⁷

The vast majority of Plaintiff's complaint involves medical conditions arising as a complication of his diabetes and care that he did or did not receive by the medical provider Defendants. As noted above, the Court has already granted summary judgment in favor of these Defendants.  Plaintiff, however, also alleges

---

³ Docs. 26, 27.
⁴ Doc. 29.
⁵ Doc. 17 at 2.
⁶ *Id.*
⁷ *Id.*

2

that Defendant Hall violated his constitutional rights by forcing him to work on an outside work detail, not changing his work assignment to one in food service, and paying Plaintiff a lower rate of pay than other prisoners.[8]

Defendant Michael Hall has been employed by the Bureau of Prisons ("BOP") since October 1997 in positions of increasing responsibility; and he became the captain at the USP Allenwood in or around June 2018.[9]

Sentenced inmates who are physically and mentally able to work are required to participate in the BOP's work program.[10] Inmates may be classified as "medically unassigned" when, because of medical restrictions, they are unable to be assigned to a work program.[11] Inmates with medical conditions who are able to work may be assigned a light duty work assignment based on physical limitations, temporary or otherwise.[12]

As captain, Defendant Hall is responsible for oversight of certain inmate work details including the barber shop, compound sanitation, and corridor sanitation, but his oversight is ministerial in nature; he does not select the inmates on his details and he does not directly oversee the work performed by inmates.[13] Each BOP institution has an Institution Work and Performance Pay Committee responsible for

---

[8] *See generally* Doc. 1.
[9] Doc. 34 at 2.
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

3

approving aspects of the inmate work and performance pay program to include job descriptions, number of inmates on each work detail, and the number of pay grades in each detail.[14]  By policy, Defendant Hall is not on the Institution Work and Performance Pay Committee and has no role in determining the pay rate for inmates.[15]

Correctional counselors, a member of an inmate's unit team, are responsible for assigning inmates to work details.[16]  Correctional counselors are tasked with ensuring appropriate assignments and quotas are filled to provide institutional needs.[17]  Defendant Hall is not responsible for assigning inmates to work details, nor does he have the authority to reassign an inmate to a different work detail.[18]  Inmates must address work assignments with their correctional counselor.[19]

Consistent with his or her duties, the correctional counselor for Plaintiff assigned him to the compound sanitation detail.[20]  Plaintiff began working on compound sanitation detail on or about May 1, 2018, approximately two months before Defendant Hall's arrival at USP Allenwood.[21]  Compound sanitation is responsible for picking up trash, disposing of trash in trash cans, washing windows,

---

[14] *Id.*
[15] *Id.*
[16] *Id.*
[17] *Id.*
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.*

weeding around the track, keeping sidewalks clear and clean, and sweeping.[22] The compound sanitation job assignment does not require prolonged standing and is a preferred job for many inmates because they are permitted to be outside and have a relative degree of freedom.[23] The only safety equipment required for inmates assigned to this detail is nitrile gloves.[24] Safety shoes are reserved for those jobs involving use of equipment or movement on slippery surfaces.[25] A job assignment in food services would require safety shoes of the type Plaintiff claims he had to wear for compound sanitation.[26]

    Defendant Hall denies Plaintiff's allegations that he threatened him or made disparaging remarks regarding his religion.[27] While Defendant Hall recalls Plaintiff speaking to him regarding his job detail and his medical issues, those interactions were typically brief and in passing.[28] According to Defendant Hall, he did not tell Plaintiff he would be placed in the Special Housing Unit ("SHU") for failure to program if he did not work as that infraction would not be used to take up the limited bed space available in the SHU.[29] Rather, Defendant Hall told Plaintiff to provide proof of his inability to work to anyone in the chain of command and he would be

---

[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*
[26] *Id.*
[27] *Id.*
[28] *Id.*
[29] *Id.*

removed from the detail.[30]  The chain of command regarding the job detail would have been Defendant Hall, his secretary, or Plaintiff's correctional counselor.[31]

Health services staff are not responsible for informing counselors or detail supervisors of changes in an inmate's duty status.[32]  Instead, inmates are provided copies of the paperwork detailing changes in their duty status to provide to their supervisors.[33]  Defendant Hall never received any indication that Plaintiff had a verifiable medical issue that would have prevented him from continuing in his position in compound sanitation detail.[34]  Had Defendant Hall received documentation to show that Plaintiff was unable to continue in his compound sanitation position, he would have forwarded it to his counselor so that Plaintiff could be removed from the compound detail and be placed in a more appropriate job at the institution.[35]

Plaintiff has filed an answer to Defendant Hall's statement of material facts. Plaintiff has failed to respond to each fact individually and has instead provided a narrative response.[36]  Plaintiff states that Defendant Hall knew Plaintiff's job detail violated his Eighth Amendment rights because Plaintiff is Muslim and having to

---

[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*
[34] *Id.*
[35] *Id.*
[36] *See generally* Doc. 36.

clean up geese droppings was a violation of his religious beliefs.[37] Plaintiff generally states that to force Plaintiff to continue working was not only a "violation of his religion [sic] beliefs but against his medical restrictions" and "was indeed a hate crime."[38]

Plaintiff states that Defendant Hall is an intricate part of the chain of command, and "executed his power by force and threats while ignoring Plaintiff's request for a job replacement."[39] Plaintiff alleges that when he showed his leg injuries to Defendant Hall, Defendant Hall dismissed his complaints and told him to stop complaining.[40]

Plaintiff reiterates that Defendant Hall forced him to clean up goose feces, which violated his rights; Plaintiff adds that sometimes the ground had standing water, which combined with the goose feces, wet his shoes and lower legs.[41] This was a hardship because Plaintiff only had one pair of shoes.[42]

## II. Standard of Review

Summary judgment should be granted when the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine dispute as to any material fact and that the moving party is entitled to a

---

[37] *Id.* at 1.
[38] *Id.* at 1-2.
[39] *Id.* at 2.
[40] *Id.* at 3.
[41] *Id.* at 3-4.
[42] *Id.* at 4.

judgment as a matter of law.[43]  A disputed fact is material when it could affect the outcome of the suit under the governing substantive law.[44]  A dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[45]  The Court should view the facts in the light most favorable to the non-moving party and make all reasonable inferences in that party's favor.[46]  When the non-moving party fails to refute or oppose a fact, it may be deemed admitted.[47]

Initially, the moving party must show the absence of a genuine issue concerning any material fact.[48]  Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment."[49]  "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla."[50]  "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c)," a court may grant summary judgment or consider the fact undisputed for purposes of the motion.[51]

---

[43] Fed. R. Civ. P. 56(c).
[44] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).
[45] *Id.* at 250.
[46] *Hugh v. Butler County Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005).
[47] *See* Fed. R. Civ. P. 56(e)(2); Local R. 56.1 ("All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.").
[48] *See Celotex Corp. v. Carrett*, 477 U.S. 317, 323 (1986).
[49] *Anderson*, 477 U.S. at 257.
[50] *Hugh*, 418 F.3d at 267 (citing *Anderson*, 477 U.S. at 251).
[51] Fed. R. Civ. P. 56(e)(2)-(3).

If the court determines that "the record taken as a whole could not lead a rational trier or fact to find for the non-moving party, there is no 'genuine issue for trial.'"[52] Rule 56 mandates the entry of summary judgment against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.[53]

Here, although Plaintiff has filed a narrative response to Defendant Hall's statement of facts, Plaintiff fails to dispute the facts dispositive to this matter, as the Court will discuss *infra*. A thorough and comprehensive review of the record makes clear that no material fact is in dispute as to the dispositive issue in this case. As such, summary judgment is appropriate.[54]

## III. DISCUSSION

It its previous memorandum opinion, the Court explained that:

> Prison inmates lack a protected liberty or property interest in prison employment.[55] "The right to earn wages while incarcerated is a privilege, not a constitutionally guaranteed right. An inmate's expectation of keeping a specific prison job, or any job, does not implicate a protected property interest."[56] Further, it is clear that Plaintiff was under the medical treatment of medical professionals and receiving treatment. As Defendant Hall correctly points out, "[i]f a

---

[52] *Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).
[53] *Celotex Corp.*, 477 U.S. at 322.
[54] *See* Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it.").
[55] *See James v. Quinlan*, 866 F.2d 627, 630-31 (3d Cir. 1989).
[56] *Wilkins v. Bittenbender*, No. 04-cv-2397, 2006 WL 860140, *9 (M.D. Pa. Mar. 31, 2006) (quoting *Bulger v. United States Bureau of Prisons*, 65 F.3d 48, 50 (5th Cir. 1995)).

prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands."[57] While that may be true, it is also true that a prisoner-plaintiff may state an Eighth Amendment conditions of confinement claim when a prisoner is forced to do work that causes injury.[58] "In this type of case, the plaintiff must prove that the defendants knowingly compelled [the prisoner] 'to perform labor that is beyond an inmate's strength, dangerous to his or her life or health, or unduly painful'"

The Court found that Plaintiff's medical duty status form restricted him from work that involved "prolonged standing" or "safety shoes," and that it was not clear from the record whether Defendant Hall knew of these restrictions, whether Plaintiff's work required prolonged standing or safety shoes, or whether Plaintiff's injuries resulted from his work assignment. As such, the Court denied Defendant Hall's motion for summary judgment, with leave to file a second motion that addresses these issues.

The undisputed material facts now demonstrate that Defendant Hall did not assign Plaintiff to an outside work assignment, had no authority to change Plaintiff's work assignment, had no control over Plaintiff's rate of pay, and never received a medical duty status sheet from Plaintiff. These facts are simply insufficient to hold Defendant Hall liable for any Eighth Amendment violation.

---

[57] *See Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).
[58] *See, e.g., Williams v. Norris*, 148 F.3d 983 (8th Cir. 1998) ("The evidence in the record supports the findings that [plaintiff] had medical restrictions on his duties, that [defendants] knew of the restrictions, that his work assignment was contrary to the restrictions, and that neither official took action to rescue him from work that was dangerous to his health and that in fact resulted in damage to him."). *See also Johnson v. Townsend*, 314 F. App'x 436, 440-41 (3d Cir. 2008).

"A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'"[59] Further, supervisory liability cannot be imposed under § 1983 by *respondeat superior*.[60] "Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."[61] A plaintiff must show that an official's conduct caused the deprivation of a federally protected right.[62] In addition, a prisoner's allegation that prison officials and administrators responded inappropriately or failed to respond to a prisoner's complaint or an official grievance does not establish that the officials and administrators were involved in the underlying allegedly unconstitutional conduct.[63]

---

[59] *Baraka v. McGreevey,* 481 F.3d 187, 210 (3d Cir. 2007). *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005); *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[60] *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978); *Rizzo v. Goode*, 423 U.S. 362 (1976); *Durmer v. O'Carroll*, 991 F.2d 64, 69 n.14 (3d Cir. 1993).

[61] *Iqbal*, 556 U.S. at 677.

[62] *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970) (A plaintiff "must portray specific conduct by state officials which violates some constitutional right.").

[63] *See Rode*, 845 F.2d at 1207-08 (concluding that review of a grievance is insufficient to demonstrate the actual knowledge necessary to establish personal involvement); *Pressley v. Beard*, 266 F. App'x 216 (3d Cir. 2008) (prison officials cannot be held liable solely based on their failure to take corrective action when grievances or investigations were referred to them); *Brooks v. Beard*, 167 F. App'x 923, 925 (3d Cir. 2006); *Croom v. Wagner*, No. 06-1431, 2006 WL 2619794, at *4 (E.D. Pa. Sept. 11, 2006) (holding that neither the filing of a grievance nor an appeal of a grievance is sufficient to impose knowledge of any wrongdoing); *Ramos v. Pennsylvania Dep't of Corrs.*, No. 06-cv-1444, 2006 WL 2129148, at *2 (M.D. Pa. July 27, 2006) (holding that the review and denial of the grievances and subsequent administrative appeal does not establish personal involvement).

It is clear that Defendant Hall acted in a supervisory role regarding certain work assignments at USP Allenwood, but had no control over specific work assignments. Plaintiff does not dispute these facts. At best, Defendant Hall had knowledge that Plaintiff had a medical condition. A supervisory official, however, has no affirmative constitutional duty to supervise or discipline subordinates so as to prevent the alleged violation of constitutional rights,[64] and it is clear that Defendant was not in charge of providing inmates with their work assignments. Further, even if Defendant Hall had been responsible for Plaintiff's work assignment and had the ability to change it, Defendant Hall never received the medical duty status report from Plaintiff. Again, Plaintiff does not dispute this fact.

To the extent that Plaintiff alleges that Defendant Hall made unkind remarks to him about his medical condition, words alone are insufficient to establish a constitutional violation.[65] Defendant Hall was not personally involved in assigning or maintaining Plaintiff's prison work assignment or his rate of pay, nor did Plaintiff provide him with a medical duty status report. As such, summary judgment is appropriate here.

---

[64] *Brown v. Grabowski*, 922 F.2d 1097, 1120 (3d Cir. 1990).
[65] *See*, *e.g.*, *Burkholder v. Newton*, 116 F. App'x 358, 360 (3d Cir. 2004); *Wilson v. Horn*, 971 F. Supp. 943, 948 (E.D. Pa. 1997) ("The verbal abuse and harassment of which he complains, although not commendable, does not rise to the level of a constitutional violation."), *aff'd*, 142 F.3d 430 (3d Cir. 1998) (table).

12

## IV. CONCLUSION

Based on the foregoing, the motion for summary judgment will be granted. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge